KELLOGG and others *v*. ROOT and others.

*(Circuit Court, W. D. Michigan, S. D.* March 30, 1885.)

1. ASSIGNMENT FOR BENEFIT OF CREDITORS — HOW. ST. MICH. §§ 8739, 8744 — FRAUDULENT PREFERENCES.

A creditor in Michigan may take security by mortgage, or otherwise, from an insolvent debtor, with knowledge of his financial weakness, so long as the creditor has no notice or knowledge that the debtor contemplates making an assignment, but the security must be given at the instance of the creditor, be duly delivered, and he must have no notice or knowledge of any fraudulent purpose, within the meaning of the statute.

2. SAME — CHATTEL MORTGAGES HELD VOID.

When an insolvent, at his own instance and convenience, voluntarily gives some of his creditors security, it is at once a suspicious circumstance, and if followed within a short time by an assignment, the conclusion will be justified, in the absence of other controlling circumstances, that both were contemplated, and should be deemed in law one transaction; and such securities will be held void. Chattel mortgages *held* void.

In Equity.

*Smith, Nims, Hoyt & Erwin,* for complainants.

*Norris & Uhl,* for defendants, Root & Co.

*Mitchell, Bell & McGarry,* for defendants, Stone & Porter.

WITHEY, J. Kellogg & Co., the complainants, are creditors of Ellen H. Stone, who, on the tenth of March, 1884, signed two chattel mortgages covering her entire stock of goods, in Portland, Ionia county: one to her father-in-law, Darius Stone, of that place, for $6,176.90; the other to the defendants, Root & Co., of Detroit, for $4,778.83, aggregating about $11,000. Her husband, Allen Stone, was her man of business, who, as her agent, managed the store and conducted her affairs. He had the mortgages prepared, took them to Mrs. Stone to be executed, and when she had signed them, they were handed back to him, one to be filed in the town clerk's office, the other to be handed to Darius Stone. Neither of the mortgagees were present, or knew that the mortgages had been prepared or signed until a subsequent day. Allen Stone had them in his possession until March 17th, at about 5 o'clock P. M., when he lodged them in the proper office to be filed. In the mean time he had caused to be prepared a common-law assignment for the benefit of Mrs. Stone's creditors; had conferred with the defendant Porter, and procured his assent to act as the assignee. From the clerk's office, after filing the mortgages, Allen Stone proceeded directly to the store, and within two hours the assignment was executed and delivered to Porter, together with the assigned property.

The bill of complaint sets up the facts in the case, and prays that the mortgages be declared void; that the assignee be enjoined from paying them; that a receiver be appointed to take charge of the assigned property, and enforce the trust. There is also a prayer for general relief. On the motion for an injunction and for the appoint-

ment of a receiver, both were refused, but the cause was retained for hearing upon the merits.

The statute of this state declares that all common-law assignments which give a preference to one creditor over other creditors shall be "void." How. St. § 8739. The deed of assignment, on its face, is not open to the objection that it gives a preference; but it is claimed that the transaction of Mrs. Stone, touching the mortgages and the assignment, manifest an attempt to evade the statute, and should be considered as one transaction. The supreme court of Michigan has given construction to the statute in question as regards some of its bearings on this case: The provision already alluded to, "that all assignments, commonly called common-law assignments, for the benefit of creditors, shall be void unless the same shall be without preferences as between such creditors." And the sixth section of the act, (How. § 8744,) which reads:

"In case there shall be any fraud in the matter of said assignment, or in the execution of said trust, or if the assignee shall fail to comply with any of the provisions of this act, or fail or neglect to promptly and faithfully execute said trust, any person interested therein may file his bill in the circuit court in chancery of the proper county for the enforcement of said trust, and the court, in its discretion, may appoint a receiver therein," etc.

The construction is that the general intent of the statute is to secure equal distribution of the property of insolvents among all their creditors, and if preferences are fraudulently attempted, the intervention of a court of equity to prevent it is authorized. Commenting on the first section, the court says:

"The statute declares the assignment 'void' if the bond is not filed; but this word is frequently used in the sense of voidable, and it must have that construction here if it shall be necessary to give other provisions of the statute effect." *Fuller* v. *Hasbrouck,* 46 Mich. 78; S. C. 8 N. W. Rep. 697.

The bill in the case at bar is filed on the theory that, although preferences were given, the assignment creates a trust, and is to be enforced, the preferences alone being void; and such view is upheld by the case referred to, and will be followed by this court as manifestly the correct construction of the statute, and which we must accept.

About two months prior to the time the assignment was made, Allen Stone, the husband of Mrs. Stone, applied to her creditors for an extension of their claims, among them to Root & Co., who were then informed concerning her financial condition: that she could not then pay all her creditors promptly, but if they would grant her an extension, he thought she would be able to pay them. Root & Co. refused, except on the terms that they should be secured, and Stone promised to give them security, in case his wife consented. Root & Co. then prepared and sent by mail to Mrs. Stone four notes, each for $887.55, payable in two, three, four, and five months, which she signed and returned, but gave no security at that time. On the tenth

of March following, as already stated, she signed the chattel mortgage on her stock of merchandise, and wrote to Root & Co. the same day, "I have this day made a chattel mortgage in your favor, on my stock of goods, for $4,778.83, which I will place on file for you." The letter was received on the twelfth of the same month, to which no reply was made. The mortgage, it is seen, was for an amount in excess of the indebtedness in January of $1,228.63, but it seems this excess was for goods sold since January, and not paid for.

Previous to applying to creditors for an extension, Mrs. Stone, through her husband, had made unsuccessful efforts to borrow three or four thousand dollars with which to meet pressing debts, and failing to find any one willing to lend on the security that she could give, the extension was applied for, which was not entirely successful, as has been seen. She owed $17,791; her assets were appraised by the assignee at $14,243; and they have produced a total of $10,742, something less than the sum of the mortgages. It is safe to say that any person of ordinary business knowledge and experience, under such circumstances as we have alluded to, would not fail to understand that Mrs. Stone was insolvent, and our conclusion is that both Mrs. Stone and her husband knew, or were bound to know, that such was the fact. I presume they may not have known the extent of the utter hopelessness of her affairs as disclosed by the inventory and appraisal, but they knew enough for them to understand, at the time she executed the mortgages, on the tenth of March, that she could not continue in business.

It will be noticed, the mortgages were made and signed in the absence of the mortgagees, and, though some time previous they had requested security, the giving of the two mortgages in question were, when given, the voluntary acts of the mortgagor. At that time, Mrs. Stone and her husband contemplated, in my opinion and understanding of the facts, making the assignment which she did make seven days subsequent. If I am correct in my conclusion, then it is manifest that, within the meaning of the statute forbidding preferences in an assignment, the making of the mortgages and the deed of assignment will be deemed in law to constitute one transaction. This being so, the preferences are to be regarded as void; and the deed of assignment is to be upheld and enforced in accordance with the case of *Fuller* v. *Hasbrouck, supra.*

It does not change the views expressed, that the mortgagees had no notice or knowledge of the contemplated assignment at the time the mortgages were signed or placed on file, for the reason that they were not actors or participants in the giving of the instruments of security. They were intended as preferences by the only party who had to do with their creation, or who had any intention concerning them; and this party's purpose then and there was to give preferences by means of the mortgages, and follow them by a general assignment in the near future. They were, therefore, fraudulent and void at their in-

ception as against other creditors, and could not be thereafter delivered as valid instruments. True, about two months prior to the assignment, Root & Co. requested and were promised security, and it is also true that Darius Stone had requested and been promised security for indebtedness of Mrs. Stone to him of something over $3,000; but the mortgages were not made to either of them under any contract, nor in compliance with the terms of such requests and promises. The mortgage to Root & Co. was for more than $1,200 in excess of the debt owing to them when such promise was made, and the mortgage to Darius Stone covered indemnity for $2,500 of paper indorsed by him for Mrs. Stone, which had not been paid when the promise was made to him, and was not included in it. The question is not whether, as between Mrs. Stone and the mortgagees, in the absence of rights of *bona fide* creditors, the mortgages would be valid, but whether, in view of the facts of this case, they are valid.

When Allen Stone, who managed the entire business, was asked, as a witness, why so much delay took place, after one of the parties had requested and been promised security, before the mortgage was executed, he answered as follows:

"I knew the minute that mortgage was put on file, that minute the credit of the concern was ruined. I knew that, and that was the reason I staved it off as long as I could."

This was true as to both mortgages; and reveals the true state of his mind, and explains why he held the mortgages for seven days without filing in the clerk's office, and why, in the intervening time, he perfected arrangements for having the assignment made within two hours after the mortgages were placed on file by him. No one, it would seem, can escape the conviction that Stone and his wife contemplated making the assignment at the time the mortgages were signed. The making of a mortgage and an assignment under like circumstances, have been held to be one transaction, because one in contemplation, and correctly so. *Perry* v. *Holden*, 22 Pick. 269; *Berry* v. *Cutts*, 42 Me. 445; *Doggett, Bassett & Hills Co.* v. *Herman*, 5 McCrary, 269–272; S. C. 16 FED. REP. 812. See the recent case decided by the supreme court of Michigan, Judge CHAMPLIN's opinion, concurred in by Judge COOLEY, *Heineman* v. *Hart*, reported in 20 N. W. Rep. 792, October 25, 1884.

The case at bar was not one where a diligent creditor was present, and pressing for security from his insolvent debtor. I do not question, in view of the decisions by the supreme court of Michigan, the right of a creditor to take security by mortgage or otherwise from his insolvent debtor, with knowledge of his financial weakness, so long as the creditor has no notice or knowledge that the debtor comtemplates making an assignment; but the security must be given at the instance of the creditor, be duly delivered, and he must have no notice or knowledge of any fraudulent purpose, within the meaning of the statute. When an insolvent, at his own instance and convenience,

voluntarily gives his creditor security, it is at once a suspicious circumstance, and if followed within a short time by an assignment, the conclusion will be justified, in the absence of other controlling circumstances, that both were contemplated, and should be deemed in law one transaction. Such is the case at bar, under the evidence, as I view it. Both mortgages were the voluntary acts of Mrs. Stone and her husband, not given to reward diligent creditors, but made voluntarily, with the intention of evading the statute forbidding preferences in a deed of assignment, without the presence or participation of the preferred creditors.

A decree will be entered in accordance with this opinion, decreeing the two chattel mortgages void as to the creditors of Mrs. Stone; that the assignee be enjoined from paying anything from the proceeds of the assigned assets on the said mortgages, or either of them; and that, after paying the costs and expenses of executing his trust, he pay the proceeds *pro rata* upon the debts proved against Mrs. Stone, according to their respective rights, under the statute in such case provided, including the debts of Root & Co. and Darius Stone with the debts of other creditors.

There were several questions raised as to the jurisdiction of the court; but they are all overruled. Mrs. Stone is not a necessary party; the assignee can contest every question that she could. The debt or claim of the complainants has been sufficiently established in this suit, in which there has been ample opportunity to contest it, and it was the duty of the assignee, if there was any defense, to make it. The bill of complaint is not a creditor's bill, but a bill to enforce the trust created by the deed of assignment, among other things, and to have preferences declared void; and this is clearly the right of complainants, within the paragraph 8744 of Howell's Statutes before alluded to. They may bring their suit in this or in the state court, being non-residents.