ABRAHAM FRANK *et al.*

*v.*

DORA J. KING *et al.*

*Filed at Mt. Vernon June 20, 1887.*

1. FRAUDULENT CONVEYANCES—*preferring creditors—preference of debtor's wife.* A debtor in failing circumstances may prefer one creditor to the exclusion of others, if he does so in good faith, for a valuable consideration; and a wife may be preferred by a husband, if she is a *bona fide* creditor, and the conveyance is made in good faith, and based upon a valuable consideration.

2. But when a husband undertakes to prefer his wife to the exclusion of other creditors, the proof should be clear and satisfactory that she has a valid, subsisting debt, which is to be enforced, and payment exacted, regardless of the husband's fortune or misfortune.

3. In this case, a person exchanged a tract of land belonging to his wife, of the value of $1000, for other land, taking the title to the latter in his own name, by her consent, and giving no obligation to pay her anything, and he afterward sold the land thus acquired, for $1600, and used the money, and $200 more of his own, in the purchase of another tract, and some twelve years after exchanging his wife's land, and while largely indebted and insolvent, conveyed the tract last acquired, to his wife, through a trustee. It was *held,* that the conveyance to the wife could not be held good as against the husband's creditors.

4. APPEAL—*whether freehold involved.* Where a third person interpleads in an action by attachment, claiming the title to the land attached, in fee simple, on the trial of the issue a freehold is involved, and either party may bring the case to this court for review, in the first instance.

WRIT OF ERROR to the Circuit Court of Saline county; the Hon. DAVID J. BAKER, Judge, presiding.

Messrs. BOYER & CHOISSER, for the plaintiffs in error.

Mr. GEORGE C. ROSS, and Mr. CHARLES H. LAYMAN, for the defendants in error.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action by attachment, brought by Abraham Frank, and others, (a firm doing business under the name and

style of A. Frank & Sons,) against T. N. Humphrey, L. B. King, and A. R. King, partners, doing business under the name and style of T. N. Humphrey & Co. The writ of attachment was issued on the 20th day of November, 1885, and on the same day the sheriff of Perry county levied on the land in controversy, as the property of L. B. King. The action was dismissed as to T. N. Humphrey and A. R. King, and the defendant L. B. King filed a plea in abatement, denying the allegations in the affidavit, upon which the attachment was issued, upon which issue was joined. Dora J. King appeared, and obtained leave to file a plea of interpleader. In her plea, filed under leave of court, she claimed to be the owner in fee simple of the lands levied upon under the writ. Upon this plea, issue was joined. On the 19th day of March, 1886, an agreement was made by the parties, as follows: "That the issues upon the said interpleader of Dora J. King be tried by the court without a jury, and that if the said issues on said interpleader of said Dora J. King be found for her, then the attachment against said L. B. King shall be quashed, but if the said issues upon said interpleader be found against the said Dora J. King, then and in that case the court shall find the issues on the plea in abatement (to the attachment writ) filed by said L. B. King, for the plaintiffs, A. Frank & Sons, and against said L. B. King." Under the stipulation, the evidence of the respective parties was introduced, and the court found the issue, as to the title of the property, in favor of Dora J. King, and quashed the attachment, and entered judgment against the plaintiffs for costs, to reverse which the plaintiffs in the action sued out this writ of error.

The defendant in error has entered a motion to dismiss the action, on the ground that a freehold is not involved, and this motion will first be considered.

The plaintiffs in the action claimed that the land upon which they levied, belonged to L. B. King. Dora J. King, who was not a party to the suit, appeared, as she had a right

to do under section 29, Revised Statutes of 1874, page 157, and interpleaded. In the plea it was averred that she was the owner in fee simple of the property attached. Under this plea the question to be determined from the evidence was, whether the title to the property attached was in Dora J. King, or in L. B. King, the defendant in attachment. The issue presented was one of title, and nothing else. No other question was presented by the pleadings, and the evidence introduced was all directed to the question of title. The plaintiffs claimed, on the one hand, that the title to the lands attached was in L. B. King, while, on the other hand, the defendant, Dora J. King insisted that she was the absolute owner of the property, and that the title was in her name. We think it a plain proposition, that as the title was directly in issue, under the pleadings and evidence a freehold was involved.

But the question is not a new one in this court. The same question arose in *Monroe* v. *Van Meter*, 100 Ill. 347, and we held that a freehold was involved. Several cases have been cited where we held a freehold was not involved on a bill filed to foreclose a mortgage, and also where a creditor's bill was filed to set aside a fraudulent conveyance, but they have no bearing on this case. The motion to dismiss will be overruled.

The next and only remaining question presented by the record is, whether the finding of the court, that Dora J. King owned the property in controversy, is sustained by the evidence. There is no dispute in regard to the fact that L. B. King owned the land up to November 17, 1885. On this date he and his wife, Dora J. King, executed a deed purporting to convey to J. W. Ross, and on the 18th day of November, J. W. Ross conveyed back to Dora J. King. At the date of this transaction, as the execution of both deeds may be treated as one transaction, the firm of T. N. Humphrey & Co. was indebted $10,000 or $11,000, and the only assets of the firm consisted of a stock of goods, worth from $4000 to $4500.

The firm was in failing circumstances. No real estate was owned by any member of the firm except the land King conveyed to his wife. King testified that he knew that he was embarrassed, and it was partly on this account that he made the deed to his wife. Several judgments were entered against the firm on the day the deed was executed. Dora J. King knew that the firm was in trouble before she received a conveyance of the land, as she admits in her evidence. No consideration passed from Ross to King for the first conveyance, nor was there anything paid, or agreed to be paid, by Dora J. King to Ross for the second conveyance. The deeds were made in the night-time,—the first one between nine and twelve o'clock, and the second one between twelve and three o'clock,—both in the same night. Under the facts, as established by the evidence, it is claimed by plaintiffs in error that the conveyance to Dora J. King was made with the intent to defraud creditors, and that the title to the land did not pass to her, while on the other hand it is claimed that Dora J. King was a creditor of her husband, and although he was in failing circumstances, he had a right to prefer her.

The law is well settled that a debtor in failing circumstances may prefer one creditor to the exclusion of others, when he does so in good faith, for a valuable consideration; and the wife may be preferred by the husband, if she is a *bona fide* creditor, and the conveyance is made in good faith, and based upon a valuable consideration. (*Tomlinson* v. *Mathews,* 98 Ill. 178.) Does the evidence introduced on the trial bring Dora J. King within the rule indicated? On this branch of the case L. B. King testified, that when he married his wife, in 1869, she owned a tract of land, which, in 1873, he traded for another tract, and "paid $200 to boot." The deed was taken in his name, his wife saying, "You can have the deed made to you and you can owe me $1000." The witness also testified that he afterwards sold the land for $1600, and used the money in payment for the land attached,

which he purchased for $1900, and held the title until it was conveyed to his wife, November 17, 1885. The evidence of King was corroborated by his wife.

We do not, however, regard the evidence sufficient to establish the fact that Dora J. King was a *bona fide* creditor, and that the conveyance was made in good faith. The claim is, that the husband became indebted to the wife in the sum of $1000, in 1873. No note was ever given for the alleged indebtedness, nor was any interest ever paid on the debt, nor was it treated as a valid indebtedness, until King was in the act of failing. Had King been prosperous in business, it is not probable that this alleged debt would ever have been thought of or heard of. But however that may be, where the husband undertakes to prefer the wife to the exclusion of other creditors, the proof should be clear and satisfactory that the wife has a valid, subsisting debt,—one which is to be enforced, and payment exacted, regardless of the fortune or misfortune of the husband. Such was not the character of this debt. A party who has a valid claim against another, does not, as a general rule, suffer the claim to stand for a period of twelve years without even taking a note, without calling for interest, and without security, doing nothing whatever to collect or secure the claim. Such is not the manner in which business is done where a valid, *bona fide* debt is in existence. We think it is plain, from the evidence, that the deed was made for the purpose of placing the property beyond the reach of creditors, and as such it was fraudulent.

The judgment of the circuit court will be reversed, and the cause remanded.

*Judgment reversed.*