25:36 LRA343n

LEWIS E. DILLMAN et al.

v.

JOHN W. NADELHOFFER.

*Filed at Ottawa June 13, 1896—Rehearing denied October 16, 1896.*

1. CREDITOR'S BILL—*in aid of execution—return nulla bona not necessary.* A bill to remove a fraudulent conveyance out of the way of an execution may be filed as soon as judgment is rendered, and without waiting for the return, unsatisfied, of an execution.

2. SAME—*when conveyance to wife is voluntary as to creditors.* A conveyance by a debtor to his wife is voluntary as to creditors where the only consideration therefor is certain sums of money furnished him by her at various times, ranging from seven to thirty years before the conveyance was made, for which no note, acknowledgment or promise of repayment was taken, no account kept or payment of interest required.

3. SAME—*retention of insufficient property by debtor at time of making voluntary conveyance.* Retention by a debtor, at the time of making a voluntary conveyance to his wife, of property of a speculative and uncertain value, consisting of shares of capital stock and credits upon the book of a corporation, which events soon after demonstrated to be insufficient to pay his debts, will not relieve the conveyance of its fraudulent character as to creditors.

4. EVIDENCE—*when burden rests on insolvent debtor to disprove fraud.* One found to be insolvent after having made a voluntary conveyance to his wife, has the burden of disproving the implication of fraud as against pre-existing creditors, which arises from the making of such conveyance.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. CHARLES BLANCHARD, Judge, presiding.

| | | | |
|---|---|---|---|
| 162 | 625 | | |
| 169 | 643 | | |
| 162 | 625 | | |
| 75a | 307 | | |
| 75a | 565 | | |
| 162 | 625 | | |
| 83a | 658 | | |
| | | 162 | 625 |
| | | 87a | 585 |
| | | 162 | 625 |
| | | 92a | ² 65 |
| | | 162 | 625 |
| | | d192 | ²205 |
| | | 97a | ²650 |
| | | 162 | 625 |
| | | 196 | ² 32 |
| | | 196 | 36 |
| | | 162 | 625 |
| | | 199 | ¹220 |
| | | 162 | 625 |
| | | 200 | ⁴260 |

GEORGE S. HOUSE, for appellants.

HALEY & O'DONNELL, (HILL, HAVEN & HILL, of counsel,) for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill in equity, filed on March 21, 1891, in the circuit court of Will county, to set aside, in aid of an execution, two conveyances, one from appellant Lewis E. Dillman to his son E. Corbin Dillman, and one from the son to Maria E. Dillman, the wife of appellant Lewis E., to certain premises occupied by the latter and his wife as their homestead, and to subject said premises to levy and sale under the execution. Upon a full hearing in the circuit court a decree was rendered as prayed in the bill, which decree having been affirmed by the Appellate Court, appellants now seek to have the same reversed by their further appeal to this court.

Briefly stated the facts are these: In April, 1883, Lewis E. Dillman, by his endorsement thereon, guaranteed the collection of the two promissory notes, for $8000 each, given by Andrew Dillman and Edward R. Knowlton to appellee. Lewis E. Dillman then owned the premises in controversy, which were of the value of about $9000. He also owned capital stock in two manufacturing companies and credits upon their books in his favor, all of which he estimated to be of the value of $40,000, but as the capital stock in one of the companies had been only in part paid up and no dividends had ever been paid upon it, it was of uncertain value, and as the other company eventually failed, we think it clear, in connection with other facts and circumstances in evidence, that his estimate of the value of his property was entirely too high. In October, 1883, he conveyed the premises in controversy to E. Corbin Dillman for the purported consideration of $10, and E. Corbin Dillman, for a similar consideration, conveyed the same to Maria E. Dillman, wife of Lewis E., but nothing was in fact paid for such

conveyances. It appears, however, by the testimony of
Lewis E., his wife and son, and it is not disputed, that
the wife, Maria E. Dillman, had prior to and up to 1876
received at different times from her father, beginning
with $200 "in the fifties" but after 1851, and ending with
$500 in 1876, the total sum of $2160, which, as received,
was turned over to Lewis E., with the understanding
that it was to go eventually into a home to be con-
veyed to her, and that it was so agreed also when the
last amount was received, in 1876. No note, receipt or
other memorandum was made or given by Lewis E. show-
ing his receipt of the money or his obligation to repay it
or to invest it as stated, and no interest was ever paid or
agreed to be paid, but, as testified to by appellants, the
conveyance of the property in October, 1883, was made to
satisfy this claim of the wife for the moneys so advanced
to her husband and of his promise to put the same into a
home for her benefit. Lewis E. had owned the property
in question and occupied it as a home with his family for
many years, and the reason given why it was not sooner
conveyed to the wife, and before the liability as guarantor
for the collection of the $16,000 to appellee was created,
was, that the property was encumbered by a mortgage
for $3000, which was not paid off until March, 1883, and
that Lewis E. did not wish to convey to his wife a home
so encumbered but intended to first remove the encum-
brance, and that when this was done, in March, 1883, he
gave the necessary papers to his attorney with instruc-
tions to prepare the deed to his wife, but that the matter
was neglected until the following October. It may have
no significance, but it is nevertheless true that during
this delay, between March and October, his contingent
liability upon the two notes for $16,000 was created. It
also appears from the evidence that by certain contracts
with his sons, made at different times, from 1881 to Oc-
tober, 1883, whereby they were to receive certain portions
of the dividends paid by the Lock Stitch Fence Company

on shares of stock which he held, the sons were to pay, and did pay, their mother, said Maria E. Dillman, $3450, and the evidence discloses no consideration for these moneys moving from Maria E. Dillman, unless it was the moneys previously received from her father and turned over to her husband, and the latter could give no other explanation why the moneys received by his wife from their sons, for a consideration moving from himself, were not applied to extinguish his wife's demands against him, than that it was the understanding that her moneys should go into a home for her. At a later period, after Dillman had become deeply involved as endorser for the corporations in which he was interested, and unable to pay his debts, Mrs. Dillman used the means she obtained through her sons from him with which to purchase from him the household furniture and other effects used by the family. His interests in the companies, so far as they continued to be of value, had been disposed of, so that in February, 1891, when his contingent liability, as guarantor, of $16,000, was reduced to a certain liability by a judgment against him for $6638 in favor of appellee, he had no property whatever remaining in his own name out of which any part of it could be collected. Appellee commenced his suit on this guaranty in January, 1888, and in May, 1888, sued out a writ of attachment in aid and levied upon the property in controversy, but it was not till February, 1891, that he recovered judgment, when judgment was rendered in his favor on both issues against Lewis E. for said amount of $6638, and a general and special execution was the following day issued and placed in the hands of the sheriff, and, as above stated, this bill was filed in the following month of March.

It is first contended that this is a creditor's bill, and that it cannot be brought until after the return of an execution *nulla bona.* It is, however, well settled by the decisions of this court that a bill in equity to remove a fraudulent conveyance out of the way of an execution

may be filed as soon as judgment is rendered, and without waiting until execution is returned. *Weightman* v. *Hatch*, 17 Ill. 281; *Newman* v. *Willetts*, 52 id. 98; *Amick* v. *Young*, 69 id. 542; *Wisconsin Granite Co.* v. *Gerrity*, 144 id. 77.

Considerable space is devoted in appellants' argument in the endeavor to show that the allegations of the bill and the proofs do not correspond,—that the bill alleges fraud in fact, while the proof shows, at most, but a constructive fraud. We shall not undertake to follow counsel in the technical argument made on this branch of the case, but it is sufficient to say that there was evidence in the record tending to prove a fraudulent intent on the part of Lewis E. Dillman in making the conveyance in question, and, even if only a constructive fraud is proven, the allegations of the bill are broad enough to cover it.

It is insisted, however, that the deed was not voluntary; that Maria E. Dillman was a creditor of her husband, and that he had the right to prefer her over his other creditors, and that the conveyance must be sustained even if he did not retain sufficient property at the time with which to pay his other debts. We cannot, upon this record, concur in this view, but must hold that the conveyance was voluntary. The first installment of moneys set up as the consideration for the conveyance was received upwards of thirty years before the conveyance, and the last upwards of seven years. No note or other written obligation or acknowledgment had been given, no account kept, no interest promised or paid, and the supposed indebtedness was barred by the statute of limitations. Besides, Mrs. Dillman had, as before shown, received from her husband more than sufficient to repay her, and the value of the property conveyed, without considering his estate of homestead therein, was more than three times the debt thus sought to be paid. It would be a plain invitation to the perpetration of fraud to permit husband and wife to hold in reserve demands of this character, and to bring them forward as a consid-

eration for a preference over other creditors in times of financial distress.

What was said in *Frank* v. *King*, 121 Ill. 250, seems quite appropriate here, (p. 254): "The claim is, that the husband became indebted to the wife in the sum of $1000 in 1873. No note was ever given for the alleged indebtedness, nor was any interest ever paid on the debt, nor was it treated as a valid indebtedness until King was in the act of failing. Had King been prosperous in business it is not probable that this alleged debt would ever have been thought of or heard of. But however that may be, where the husband undertakes to prefer the wife to the exclusion of other creditors, the proof should be clear and satisfactory that the wife has a valid, subsisting debt,—one which is to be enforced and payment exacted regardless of the fortune or misfortune of the husband. Such was not the character of this debt. A party who has a valid claim against another does not, as a general rule, suffer the claim to stand for a period of twelve years without even taking a note, without calling for interest, and, without security, doing nothing whatever to collect or secure the claim. Such is not the manner in which business is done where a valid, *bona fide* debt is in existence."

The next contention is, that even regarding the conveyance as a voluntary settlement upon the wife, Lewis E. Dillman was at the time in good circumstances and had ample property left to pay all of his debts,—that in fact he had no indebtedness except the contingent liability to appellee. After a careful consideration of the evidence we are forced to the same conclusion reached by the trial and Appellate Courts. The property of Dillman consisted in shares of capital stock of uncertain value in two incorporated companies, and credits on their books. The stock soon declined in value. His shares in the only one that paid any dividends became worthless by the failure of the company, and the other stock he disposed of, at a small percentage of its face

value, in payment of a debt created after the guaranty of the notes to appellee. Judged by the results he wholly failed to retain in his hands sufficient property to meet his obligations. This is conceded, but counsel insists that the question whether he retained property amply sufficient to pay all of his debts then existing must be determined from the evidence showing what the value of the property was at the time of the transfer, and not from its sufficiency as shown by the final result as ascertained several years afterward. This is, to a certain extent, true, but the whole evidence bearing upon the question must be considered. It was said in *Harting* v. *Jockers*, 136 Ill. 627, (on p. 635,) that "while it is ordinarily true that the question of whether sufficient has been retained may be determined by the result, where there is diligent pursuit of legal remedies following shortly after the transfer which is alleged to be fraudulent, it only becomes competent to show such result as tending, as before said, to determine the state and condition of the debtor's estate at the time of the alleged fraudulent transfer of his property." See, also, *Patterson* v. *McKinney*, 97 Ill. 41.

While the question is one not altogether free from doubt, we are inclined to agree with the circuit and Appellate Courts that the property retained by Lewis E. Dillman was of a speculative character and of uncertain value, and that he did not retain property amply sufficient to meet his liabilities. It so eventually proved, and the evidence, fairly considered, does not show the contrary. The conveyance being voluntary, and he having become insolvent, the burden of proof devolved on him to disprove the implication of fraud as to pre-existing creditors, arising from the making of the conveyance. *Moritz* v. *Hoffman*, 35 Ill. 553; *Patterson* v. *McKinney*, *supra*.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE CARTWRIGHT took no part.