## FLEISCHNER *v.* BANK OF McMINNVILLE.

[54 Pac. 884, 60 Pac. 603, 61 Pac. 345.]

1. DISMISSING APPEAL—FILING ASSIGNMENTS OF ERROR—PRACTICE.—Where the respondent has not been materially affected by a failure to print the assignments of error in the abstract, as required by Rules 4 and 9 of the court (24 Or. 595), the omission may be excused on the explanation of appellant's attorney that it was an oversight. A formal written motion for permission to correct the abstract, showing facts excusing the omission, is the usual and better practice, though an oral application at the hearing is permitted in this case.

2. JURISDICTION OF EQUITY—VALIDITY OF ASSIGNMENT.—A court of equity has jurisdiction to try and to determine the validity of a general assignment for creditors, and to appoint its receiver to assume control of the assigned property. Such property is not *in custodia legis*, whatever may be its position under a confessedly valid assignment.

3. CREDITOR'S SUIT—EVIDENCE OF JUDGMENT.—Since a creditor cannot sue to set aside a debtor's conveyance as fraudulent until he has acquired a lien on the property by judgment or attachment, the record of an action which showed that such creditor had attached defendant's goods, but did not show whether or not the attachment was prior to his suit to set aside the conveyances, is not competent evidence.

4. CREDITOR'S SUIT—ISSUANCE OF EXECUTION.—The issuance and return of an execution is not a necessary preliminary to the right to maintain a creditor's suit to set aside conveyances by the debtor and to uncover assets, where the debtor is alleged to be insolvent.

5. WAIVER OF OBJECTION TO SUPPLEMENTAL BILL.—Where the plaintiff in a suit to set aside a conveyance as in fraud of creditors, based on an alleged attachment, filed a supplemental bill, averring that since the commencement of the suit he had secured judgment against defendant in his attachment action at law, and such supplemental bill was not objected to on the ground that it

sought to maintain the suit on new facts which had occurred since the filing of the original bill, such objection was waived, and plaintiff was entitled to have the case considered on the allegations of the bill as supplemented.

6. CREDITOR'S SUIT—RIGHT TO FILE SUPPLEMENTAL BILL.—Where a creditor has commenced a suit to set aside fraudulent transfers by his insolvent debtor and to reach concealed assets, based on the lien acquired by an attachment in a law action, he is entitled as of right to file a supplemental bill showing that since commencing his creditor's suit the attachment claim has been reduced to judgment.

7. POSITION OF INTERVENING PARTIES TO CREDITOR'S SUIT—JURISDICTION.— Creditors who intervene in a suit to reach concealed assets become thereby entitled to the protection of the court as much as if they had originally been parties, and the failure of jurisdiction as to the plaintiff will not affect the right of such intervenors to have the suit continue in order to accomplish its original purpose.

8. EVIDENCE OF FRAUDULENT CONVEYANCE.—The alleged consideration for mortgages executed by defendant to his wife and brother-in-law was a sum loaned by the wife nine years prior to the execution of the mortgages, and a sum advanced by the brother-in-law thirteen years before. No demand or payment had ever been made thereon, nor any account of them kept by defendant on his own books, nor in his annual invoices or statements to commercial agencies. Some time before the execution of the mortgages, defendant conveyed land to his wife almost equal in value to the alleged debt, and the brother-in-law had for years purchased goods from defendant, paying cash therefor. *Held*, that the conveyances were void, as in fraud of creditors.

9. PREFERRING CREDITORS—VOID GENERAL ASSIGNMENT.—Defendant, being on the verge of failure and pressed by creditors, voluntarily executed chattel mortgages to secure other creditors; and, on plaintiff immediately attaching the goods, defendant made a general assignment for creditors. One of the debts secured by the mortgages was also secured by defendant's wife, who had property sufficient to satisfy it, so that the mortgage redounded to her benefit. At the time of executing the mortgages, defendant had discussed with his attorney the advisability of making an assignment. *Held*, that the mortgages were not a preferment of creditors in good faith, but that they were made in contemplation of the assignment, and were to be treated as a part of the same transaction, and therefore void.

10. FRAUDULENT CONVEYANCES—DISPOSAL OF PROCEEDS BY RECEIVER.—Where certain creditors in a suit against mortgagees, instituted, not for the benefit of general creditors, but to set aside certain mortgages executed by their debtor which are valid as between the parties, establish the invalidity as to them of such mortgages, the surplus proceeds of the mortgaged property, after satisfying complainants, may be paid to the mortgagees.

From Multnomah : ALFRED F. SEARS, JR., Judge.

Decided 24 October, 1898.

On Motion to Dismiss Appeal.

[54 Pac. 884.]

*Mr. O. F. Paxton*, for the motion.

*Mr. J. C. Moreland, contra.*

Per Curiam.  1.  This is a motion to dismiss the appeal for the reason that appellants have failed to specify the grounds of error relied upon for the reversal or modification of the decree appealed from, as required by Rules 4, 9 (24 Or. 595).  The abstract was served and filed August 10 last, and respondents subsequently procured an extension of time within which to prepare and file their briefs, but before the extended period had expired filed the motion in question to dismiss.  When the matter was brought on for hearing, the counsel for appellants moved in open court for leave to amend the abstract by appending the assignments to error upon which the appellants intended to rely, and stated that the assignments had been omitted by oversight upon his part.  A formal written motion, based upon affidavit, showing facts excusing the omission, is the usual and better practice.  But the question presented is not jurisdictional, and the abstract being required in certain form, and containing certain matter for the benefit and assistance of the court, and to relieve it as much as possible from the labor of searching in many instances through cumbersome records, and to enable it to ascertain at a glance the errors relied upon, it may, under certain contingencies, be excused entirely, or the court may dismiss the cause for nonobservance of requirements touching it.  Nevertheless all parties who can reasonably comply with the rules governing its preparation and service should be required to conform to them.  The technical rule adopted in *Cross* v. *Chichester*,

4 Or. 114, and followed in *State* v. *McKinmore*, 8 Or. 207, requiring a party, who is desirous of perfecting his appeal by filing a new or amended undertaking, to make his application or file his motion for leave therefor before the motion to dismiss is brought on for hearing, has never been adopted or followed in so far as it concerns a compliance with the rules of the court. Indeed, it is doubtful if the rule otherwise obtains at this time : *Mendenhall* v. *Elwert*, 36 Or. 375 (52 Pac. 22). We are disposed to grant the leave to amend under the conditions recited, as the respondents have not been materially delayed or injured by the oversight of appellants' counsel, and the order will be made permitting the appellants to amend their abstract by appending thereto the assignments of error to be relied upon within five days from this date ; respondents to have twenty days thereafter within which to file their briefs.                  MOTION OVERRULED.

Decided 26 March, 1900.

ON THE MERITS.

[60 Pac. 603.]

Bill by Solomon Hirsch and others, doing business under the firm name of Fleischner, Mayer & Company, and the Kuh, Nathan & Fisher Company (Sweet, Orr & Company, interveners), against the First National Bank of Mc-Minnville and others to set aside, as fraudulent and void, four chattel mortgages given by the defendant F. W. Redmond to his co-defendants, and a deed of assignment from him to defendant Jacob Wortman, on the ground that they were made for the purpose of hindering, delaying, and defrauding creditors, and especially the plaintiffs. On August 12, 1897, and long prior thereto, Redmond was engaged in business at McMinnville, Oregon, and during such time had become indebted for goods purchased and money borrowed to such an extent as to render him insolvent. The plaintiffs and others, holding

claims against him amounting in the aggregate to $2,000 or more, were, and had been for some days, pressing him for payment. After an unsuccessful attempt to borrow money to pay and discharge their claims, without consultation with any of his creditors, and without advising them of his proposed action, on the day named he executed four chattel mortgages, covering his entire stock of goods and store fixtures : one in favor of the First National Bank of McMinnville, to secure the payment of a promissory note of himself and wife for $2,000, of date July 6, 1897; another in favor of his wife, M. A. Redmond, for $1,300, to secure a promissory note for that amount made at the same time that the mortgage was executed, but dated the second of August, 1897 ; another in favor of his sister, the defendant M. C. Redmond, for $569, to secure a promissory note made at the same time, but dated July 1, 1897 ; and the fourth to secure the payment of a promissory note for $2,100 made at the same time, but dated August 2, 1897, in favor of his brother-in-law, the defendant J. E. Smith. Immediately after the execution of these mortgages, he caused them to be filed for record in the office of the recorder of conveyances, in the order above indicated, and soon thereafter delivered to the defendant Wortman, President of the First National Bank, the keys to his store, and assigned and transferred to him all his book accounts. At that time his entire property consisted of his stock of goods, store fixtures, and book accounts, and did not exceed in value the aggregate amount of the mortgages. Upon the same day the mortgages were filed the plaintiffs commenced an action against Redmond to recover the sum of $1,038—being the balance due them for goods, wares, and merchandise sold and delivered to him—and attached, or attempted to attach, the property described in the chattel mortgages referred to.

On the seventeenth of August, Redmond, notwithstanding the fact that he owned or possessed no property except that covered by the chattel mortgages and the book accounts theretofore assigned and transferred to Wortman, and that the amount secured by such mortgages, if valid, equaled or exceeded the value of the property owned by him, made, executed, and delivered to Wortman a certain instrument, in the form of a general assignment for the benefit of creditors, under the assignment laws of the state.   Thereafter, and on the twenty-fourth of August, the plaintiffs Fleischner, Mayer & Company brought this suit to set aside and cancel the chattel mortgages referred to, and the deed of assignment, on the ground that they were fraudulent and void, and made for the purpose of hindering, delaying, and defrauding creditors, and especially the plaintiffs, and were, in effect, all one transaction, and a general assignment, and therefore void, under the statute, on account of the attempted preferences.   In their complaint they allege the commencement of the action at law by them against Redmond, and the issuance and levy of the writ of attachment on the twelfth of August, 1897 ; that the four chattel mortgages were fraudulent and void, without consideration, and made for the purpose of hindering, delaying, and defrauding creditors ; that such mortgages and the deed of assignment were one and the same transaction, and void under the statute; and that Redmond was then and now is wholly insolvent.   Upon the filing of the complaint a receiver was appointed, who took possession of the property in controversy, and, upon stipulation and by agreement of parties, sold the goods and store fixtures, realizing therefor, with collections on book accounts, the sum of $5,327.82, which, after deducting the costs of the receivership, he paid into court for distribution.   The defendants the First National

Bank and Jacob Wortman, for himself and as assignee
for the benefit of the creditors, joined in an answer in
which they admit the indebtedness due the plaintiffs, and
the commencement of the action at law by them against
Redmond, but deny that a writ of attachment was duly
issued in such action, or duly levied by the Sheriff of Yam-
hill County on the twelfth of August, 1897, or at any other
time. They also deny the fraud charged in the complaint,
and affirmatively allege that when the chattel mortgage
was executed by Redmond to the bank it was the owner
and holder of a note against him for $2,000, and that such
mortgage and assignment of book accounts were made
and accepted in good faith to secure the payment of such
indebtedness, and not with intent to hinder, delay, or de-
fraud creditors ; that the general assignment by Redmond
to the defendant Wortman was made in good faith, and
there was no intent on his part to make such assignment
at the time of the execution of the mortgages. The de-
fendants J. E. Smith and M. C. Redmond join in an an-
swer denying the material allegations of the complaint,
and alleging that the notes and mortgages executed in
their favor were given in good faith to secure valid in-
debtedness. The defendant F. W. Redmond and his wife
each answer separately, denying the allegations of the
complaint, and alleging affirmatively that the transactions
set out in the complaint were entered into in good faith
to secure a valid and subsisting indebtedness due the re-
spective parties mentioned therein. The averments of
the several answers were put in issue by replies.

On October 30, 1897, and before trial, the Kuh, Nathan
& Fisher Company and Sweet, Orr & Company were al-
lowed to intervene, upon a petition alleging that at the
time of the making and execution of the mortgages and
deed of assignment referred to in plaintiffs' complaint

Redmond was indebted to the Kuh, Nathan & Fisher Company in the sum of $792, and that on October 2, 1897, they recovered a judgment against him for that amount, upon which an execution was issued, and returned by the Sheriff of Yamhill County with the indorsement thereon that he was unable to find any property of the defendant Redmond on which to levy the same ; that at the same time Redmond was indebted in the sum of $442.01 to Sweet, Orr & Company, who recovered a judgment against him for such sum on October 2, 1897 ; and that they likewise caused an execution to be issued, which was returned *nulla bona.* The petition then proceeds with a statement of substantially the same facts in reference to the execution of the mortgages by Redmond to his co-defendants, and of the deed of assignment to the defendant Wortman, as set out in plaintiffs' complaint. At the trial the plaintiffs offered in evidence the judgment roll in the action at law brought by them against Redmond, but on account of some objection to the form of the affidavit and undertaking on attachment, and the return of the officer thereon, all the papers in such roll, except the judgment itself, were withdrawn by the plaintiffs, and do not form a part of the record. They thereupon, with permission of the court, filed a supplemental complaint, alleging that after the commencement of the suit, and on the thirtieth of September, 1897, they duly recovered judgment in their action at law against the defendant Redmond. The court below found the four chattel mortgages and the deed of assignment to be fraudulent and void as to the plaintiffs and interveners, and entered a decree setting the same aside, and directing that the money in the hands of the receiver be applied—First, to the payment of the costs and disbursements of this suit, and the costs, charges, and the expenses of the receivership ; secondly, to the

payment of the amount due the plaintiffs, with interest; and, thirdly, to the payment of the amount due the interveners. And from this decree the defendants appeal.

AFFIRMED.

For appellants there was a brief and an oral argument by Messrs. J. C. Moreland and J. J. Spencer.

For respondent plaintiffs there was a brief over the name of Paxton, Beach & Simon, with an oral argument by Messrs. O. F. Paxton and N. D. Simon.

MR. JUSTICE BEAN, after stating the facts in the foregoing language, delivered the opinion of the court.

The plaintiffs are met at the outset with the objection that the court is without jurisdiction, because (1) the property in controversy, being in the possession of an assignee, under an assignment regular upon its face, at the time the suit was commenced, was in custodia legis, and the validity of the assignment could only be attacked in the circuit court of the county in which it was filed; and (2) the plaintiffs are not entitled to relief, because they failed to prove that prior to the commencement of the suit they had attached the property of Redmond in the action at law brought by them against him.

2. A sufficient answer to the first objection is that this suit proceeds upon the theory that the assignment is fraudulent and void, and therefore has no force or effect whatever. In such case the attempted assignment could not operate to place the property of the assignor in custodia legis, even if a valid assignment would have that effect; and we are not advised of any rule of law which prevents a court of equity, of competent jurisdiction, from assuming jurisdiction, upon a proper complaint, to

try and determine the validity of an alleged fraudulent assignment, under the statute: *Bradley* v. *Bailey*, 95 Iowa, 745 (64 N. W. 758).

3. Passing, then, to the next question : It is settled that before a creditor can maintain a bill to set aside the fraudulent conveyances of his debtor he must either establish his claim by judgment, or acquire a lien by attachment : *Dawson* v. *Coffey*, 12 Or. 513 (8 Pac. 838) ; *Dawson* v. *Sims*, 14 Or. 561 (13 Pac. 506) ; *Matlock* v. *Babb*, 31 Or. 516 (49 Pac. 873). This doctrine is not questioned by the plaintiffs. But they insist that the findings of the court in the action against Redmond that the property in question had been theretofore duly attached in such action, and the judgment therein, directing a sale thereof, conclusively determined the validity of the attachment, as against the defendants to this suit. But, if this is not so, the filing of a supplemental complaint, showing that subsequent to the commencement of the suit the plaintiffs recovered a judgment against Redmond, and that he is insolvent, cures any objection on account of the suit having been prematurely brought. In the record offered and admitted in evidence there is a finding by the court that the stock of goods and merchandise belonging to Redmond had been duly attached in the action, and the judgment based on such findings directs the sale thereof. There is no finding, however, as to the date of the attachment, nor does it appear from the record that but one attachment was levied or attempted to be levied ; so that, if it be conceded that the validity of an attachment can be thus proven, the findings and judgment entry thereon are insufficient, because they fail to show that the attachment was prior to the commencement of the present suit. But, in our opinion, the filing of the supplemental complaint, showing the recovery of the judgment, when taken

in connection with the admitted allegation that Redmond was insolvent, is sufficient to cure any defect on account of the suit having been prematurely brought.

4.   Where a debtor is insolvent, according to the weight of authority, the issuance of an execution and its return *nulla bona* are not necessary :   5 Enc. Pl. & Prac. 521 ; Smith, Rem. Cred. 195, 196 ;   *Ryan* v. *Spieth*, 18 Mont. 45 (44 Pac. 403) ;   *Case* v. *Beauregard*, 101 U. S. 688, 25 L. Ed. 1004 ;   *Dillman* v. *Nadelhoffer*, 162 Ill. 625 (45 N. E. 680).   And therefore the fact that no execution was issued on the judgment is of no consequence in this suit.

5.   No objection was made to the supplemental complaint by demurrer, and the rule is that, even where a supplemental bill seeks to maintain the suit upon new facts which have occurred since the filing of the original bill, objection must be made at the hearing, or it is waived.   In *Pinch* v. *Anthony*, 10 Allen, 470, it appeared that at the time of the filing of the original bill the plaintiff had no cause of suit ; but he filed a supplemental bill, setting forth certain facts that had occurred during the pendency of the suit.   It was objected that the facts set forth in the supplemental bill could not be considered ; that the original bill should be dismissed, and the plaintiff have leave to bring a new suit if so advised.   But the court said :   "We have found no authority that goes so far as to authorize a party, who has no cause of action at the time of filing his original bill, to file a supplemental bill in order to maintain his suit upon a cause of action that accrued after the original bill was filed, even though it arose out of the same transaction that was the subject of the original bill.   It would seem to be contrary to principle to allow this to be done.   *Milner* v. *Milner*, 2 Edw. Ch. 114, is an authority against allowing a new cause of action to be stated in a supplemental bill.   But the plaintiff may, by means of a supplemental bill, introduce into

his case facts that have occurred since the original bill was filed. The extent to which this may be done is not definitely settled. But, if he goes too far in this respect, the defendant has opportunity to object to it when leave is asked to file the supplemental bill, or by demurrer to the bill for that cause after it is filed. In this case the defendants did demur, but did not present this as a ground of demurrer. The cause was sent to a master, and was recommitted to him, by consent of both parties, for the purpose of being fully heard upon its merits ; and it has been so heard, and his report embraces every matter that would have been needful if a new bill had been filed. The objection to the supplemental bill ought, therefore, to be regarded as waived. The plaintiff is entitled, therefore, to have his case considered and determined upon the allegations of his bill and supplemental bill taken together." And in *Crump* v. *Perkins*, 18 Fla. 353, it was held that the objection to a supplemental bill, on the ground that it sought to maintain the suit upon new facts occurring since the filing of the original bill, could not be entertained, because it was waived by omitting to demur to the bill upon that ground, and going into a hearing upon the merits. In *Lowry* v. *Harris*, 12 Minn. 255, 267, it is said : "Even if the original bill was wholly defective, and the supplemental bill set up a title vesting in the plaintiffs subsequent to the commencement of the action, objection thereto on that ground must be taken by demurrer to the supplemental bill, or objection to its being filed ; otherwise, it is waived. Having answered the supplemental bill without objection, and not having demurred, it is too late to take advantage of it on the trial by objecting to the evidence." See, also, *Wetmore* v. *Truslow*, 51 N. Y. 338.

6. In accordance with this rule, a general creditor, who had filed his bill for relief against a judgment fraud-

ulently confessed by his debtor, was permitted, after a decree *pro confesso* against the defendants, and *ex parte* hearing upon the evidence, to file a supplemental bill, in order to incorporate in the record the fact that after the commencement of his suit, the complainant obtained a judgment and sued out an execution at law : *Edgar* v. *Clevenger*, 3 N. J. Eq. 258. And in *Meacham Arms Co.* v. *Swarts*, 2 Wash. 412 (7 Pac. 859), where an injunction had been granted to an attaching creditor before judgment in a law action enjoining the foreclosure of a fraudulent mortgage on the attached property, it was held that the court should have permitted a supplemental bill to be filed, showing the rendition of judgment in the action, instead of dismissing the original bill for failing to show that fact. We think, therefore, that the supplemental bill was properly filed, and must be considered as a part of the original bill, and if, upon the whole, the plaintiffs are entitled to the relief demanded, it must be so decreed : *Cunningham's Adm'r* v. *Rogers*, 14 Ala. 147 ; *Fiegley* v. *Fiegley*, 7 Md. 537 (61 Am. Dec. 375).

We have not overlooked the cases of *Morrison* v. *Shuster*, 1 Mackey, 190, and *Brown* v. *Bank of Mississippi*, 31 Miss. 454. In the former the original suit was not a creditors' bill, but one to obtain the possession and redelivery of certain goods sold by the plaintiff to the insolvent, on the ground that there was no valid contract of sale between the parties, and the title did not pass. Thereafter other parties sued and obtained judgment against the defendant, and filed supplemental bills in the original suit, alleging that fact, and it was claimed that such bills cured a fatal defect in the original proceedings. But the court held that the subsequent judgment of other parties would not be effective to confer jurisdiction in the original case, and hence this decision can hardly be regarded in point. The case of *Brown* v. *Bank*, however, seems to be directly

against the views we have indicated; but it appears to us that the court proceeded upon the mistaken theory that an attachment or judgment is essential to the jurisdiction of a court of equity to set aside attempted assignments or transfers of property by a debtor for the purpose of injuring, delaying, or defrauding his creditors. As we understand the law, the jurisdiction to grant the relief prayed for is inherent in a court of equity, and is independent of any proceedings at law : 8 Am. & Eng. Enc. Law (1 ed.), 651. But, because a court of equity will not exercise this power so long as the plaintiff has a remedy at law, it is required that he exhaust such remedy before invoking the aid of equity; and hence it is held in many jurisdictions that a mere contract creditor cannot maintain a creditors' bill, although the authorities are not uniform upon this question. If, however, he commences such a proceeding before he has acquired a lien by attachment, or before he has reduced his claim to judgment, the most that can be claimed is that his suit is prematurely brought; and if, during its pendency and before the trial, he exhausts his remedy at law, and that fact is made to appear by supplemental bill, which the court, in the exercise of a sound discretion, permits him to file, we can conceive of no valid reason why he ought to be denied relief because his suit was prematurely brought.

7. We have so far considered the question of jurisdiction as if Fleischner, Mayer & Company were the only parties plaintiff in this suit, and without regard to the effect of the intervention of the Kuh, Nathan & Fisher Company and Sweet, Orr & Company. The practice of permitting judgment creditors to come in and make themselves parties to a suit of this character, and so obtain the benefit of the suit, "is well settled," says the Supreme Court of the United States in *Myers* v. *Fenn*, 72 U. S. (5 Wall.) 205, 18 L. Ed. 604. From the time of filing

their petition of intervention, the interveners became, in effect, parties plaintiff; and as they had reduced their claims to judgment, and executions thereon had been returned *nulla bona*, there can be no question as to the jurisdiction of the court, so far as they are concerned; and we can discover no valid objection to its proceeding to determine the status of the mortgages and deed of assignment, and, if found to be fraudulent, to set them aside as against creditors, and protect the rights of all the creditors concerned, including the plaintiffs Fleischner, Mayer & Company, whose claim was reduced to judgment prior to the trial in the court below. However, we do not care to put our decision upon the ground that jurisdiction was conferred through the intervening creditors, but are satisfied that the technical invalidity of the attachment in the action at law brought by Fleischner, Mayer & Company against Redmond is immaterial, in view of the subsequent recovery of a judgment, and the filing of a supplemental bill.

8. This brings us to the merits of the controversy. The chattel mortgages given by Redmond to his wife and brother-in-law, Smith, are unquestionably void as to creditors. In 1888, some nine years prior to the execution of these mortgages, Redmond was indebted to the defendant bank in the sum of $2,000 on a promissory note signed by himself and wife, which at her request was taken up, and two notes given by them in lieu thereof,—one for $1,300, and another for $700. The $1,300 was subsequently paid, as she claims, by her out of her own funds, and constitutes the alleged consideration for the chattel mortgage in her favor. In 1884, some thirteen years prior to the giving of the chattel mortgage to Smith, Messrs. Allen & Lewis, of Portland, held a promissory note for $2,100, signed by Redmond and Smith, which appears to have been paid off or settled in some way by Smith. It is

claimed that Redmond was the principal upon this note, and Smith a mere surety, and that by his payment thereof Redmond became indebted to him in the sum of $2,100, and this constitutes the alleged consideration for the chattel mortgage given to him. It is admitted that no note or other acknowledgement of indebtedness was ever given by Redmond to either his wife or Smith for the respective amounts now claimed by them. No demand was ever made upon him by either of them for the payment of such claims, no payments were ever made thereon, either of principal or interest, and no account kept thereof upon Redmond's books, which purported to contain a statement of all his indebtedness ; nor were these several amounts, or either of them, included in any of his statements to the commercial agencies, nor in his annual invoice and statement of his business made for his own information. Besides, the evidence shows that Redmond voluntarily conveyed to his wife, shortly before the execution of the $1,300 note to the bank, real property almost, if not quite, equal in value to the face of such note, and that from 1891 to February, 1897, Smith had an open account upon Redmond's books for produce purchased by him, and for which he paid cash from time to time ; and no reference is made therein to the $2,100 indebtedness now claimed. Under these circumstances, it would, as said by the Supreme Court of Illinois in a similar case, "be a plain invitation to the perpetration of fraud to permit" relatives "to hold in reserve demands of this character, and to bring them forward as a consideration for a preference over other creditors in times of financial distress :" *Dillman* v. *Nadelhoffer*, 162 Ill. 625 (45 N. E. 680). And what was said by that court in *Frank* v. *King*, 121 Ill. 250 (12 N. E. 720), seems quite appropriate here : "The claim is that the husband became indebted to the wife in the sum of $1,000 in 1873. No note was ever given for the alleged indebtedness, nor was any

interest ever paid on the debt, nor was it treated as a valid indebtedness until King was in the act of failing. Had King been prosperous in business, it is not probable that this alleged debt would ever have been thought of or heard of. But, however that may be, where the husband undertakes to prefer the wife to the exclusion of other creditors, the proof should be clear and satisfactory that the wife has a valid, subsisting debt,—one which is to be enforced, and payment exacted, regardless of the fortune or misfortune of the husband. Such was not the character of this debt. A party who has a valid claim against another does not, as a general rule, suffer the claim to stand for a period of twelve years without even taking a note, without calling for interest, and without security,—doing nothing whatever to collect or secure the claim. Such is not the manner in which business is done where a valid, *bona fide* debt is in existence." There are many other authorities to the same effect. See, also, *Fisher* v. *Moog* (C. C.), 39 Fed. 665 ; *Dillman* v. *Nadelhoffer*, 162 Ill. 625 (45 N. E. 680); *Gable* v. *Columbus Cigar Co.* 140 Ind. 563 (38 N. E. 474) ; *Bank of California* v. *Cowan*, 21 C. C. A. 279 (75 Fed. 145); *Sturm* v. *Chalfant*, 38 W. Va. 248 (18 S. E. 451); *Haaven* v. *Hoaas*, 60 Minn. 313 (62 N. W. 110); *Kendall* v. *O'Neal*, 16 Mont. 303 (40 Pac. 599).

9. The claims of the First National Bank and Redmond's sister, which he intended to secure by the chattel mortgages in their favor, are admittedly valid ; and, so far as they are concerned, the only question for consideration is whether such mortgages were given and accepted in good faith, and whether they and the general assignment subsequently executed by Redmond are, under the circumstances, to be treated as one transaction, and therefore void, as in violation of the assignment law of the state. The mortgages were made by Redmond upon his own motion, and as his own voluntary act, when con-

fronted with inevitable financial failure. He was being pressed by the plaintiffs and the intervening creditors, and had just failed in his efforts to raise money with which to satisfy their claims. He must, from his experience and observation as a business man, have known that an attachment was inevitable as soon as the chattel mortgages were placed on file ; and we cannot escape the conclusion that his plan was to secure his relatives by such chattel mortgages, and, if necessary, to subsequently execute an assignment in order to dissolve such attachments as might thereafter be levied. It is true, Mr. Wortman, the president of the bank, says that when Redmond applied to him for a loan of about $2,000, with which to pay the claims of plaintiffs and interveners, he not only refused to make the loan, but informed Redmond that he must have additional security for the debt already due the bank. But it does not appear that he made any other effort to obtain such security, or that the mortgage to the bank was given at his request or upon his instigation, or even that he had any knowledge thereof until after it had been executed and filed. It must not be overlooked, in this connection, that Redmond's wife was security upon the note to the bank ; and the evidence shows that she was the owner of sufficient property with which to pay such indebtedness, so that the bank seems to have been in no apparent danger of losing its claim, even if it did not obtain additional security. As a matter of fact, therefore, the mortgage was more in the interest of Redmond's wife than of the bank, and was, no doubt, prompted by a desire on his part to protect her. A significant fact in this connection is that, according to the order in which the mortgages were filed, priority was given to those in which his wife was particularly interested, and which were intended for her especial benefit.

The case of the bank does not impress us as one where

a diligent creditor was pressing for security. The rule is unquestioned that a debtor in failing circumstances may prefer one creditor to the exclusion of another when it is done in good faith, and that the general assignment law does not prevent such preferences. And it is equally well settled that a creditor may take security for his debt from an insolvent debtor, with knowledge of his financial weakness; but such security ought to be given at the instance of the creditor, and must be accepted in good faith. As said in *Kellogg* v. *Root* (C. C.), 23 Fed. 525 : "When an insolvent, at his own instance and convenience, voluntarily gives his creditor security, it is at once a suspicious circumstance ; and, if followed within a short time by an assignment, the conclusion will be justified, in the absence of other controlling circumstances, that both were contemplated, and should be deemed, in law, one transaction." And again in the same case it is said : "It does not change the views expressed, that the mortgagees had no notice or knowledge of the contemplated assignment at the time the mortgages were assigned or placed on file, for the reason that they were not actors or participants in the giving of the instruments of security. They were intended as preferences by the only party who had to do with their creation, or who had any intention concerning them ; and this party's purpose then and there was to give preferences by means of the mortgages, and follow them by a general assignment in the near future. They were therefore fraudulent and void at their inception as against other creditors, and could not be thereafter delivered as valid instruments." We, of course, cannot look into the mind of Redmond, and determine whether he actually contemplated an assignment at the time of the execution of the mortgages ; but such seems to us the irresistible conclusion from all the circumstances of the case. He admits that the matter of an assignment was

talked over between himself and his attorney at the time the mortgages were executed, although the evidence does not disclose what was said on that occasion. Enough is shown, however, to satisfy us that the transaction was a scheme on his part to cover his entire property by mortgages in favor and for the benefit of his relatives, to secure real and fictitious claims, and ought not to be upheld as against *bona fide* creditors. Where an insolvent debtor has formed a determination to voluntarily dispose of his property for the benefit of his creditors, and has entered upon the performance of that determination, the number or character of the instruments used by him to accomplish his purpose is wholly immaterial. All acts having for their object the consummation of such purpose will be regarded by the court as parts of one transaction, and, if preferences are thereby attempted, the assignment is void : *Inman* v. *Sprague*, 30 Or. 321 (47 Pac. 826). It follows that the decree of the court below must be affirmed, and it is so ordered.                    AFFIRMED.

Decided 11 June, 1900.

## ON PETITION FOR REHEARING.

[ 61 Pac. 345.]

MR. JUSTICE BEAN delivered the opinion of the court.

The record shows that, after the plaintiffs rested, defendants' counsel moved for a nonsuit, pending which counsel for plaintiffs asked leave to file a supplemental complaint, '' to conform to the facts proven at this trial, setting up, in addition to the one filed in the other complaint, a judgment ;'' to which counsel for defendants objected, '' for the reason this ought to have been filed before ; plaintiffs knew about the judgment, and should have filed this supplementary complaint before ;'' to which counsel for plaintiffs replied, '' I simply desire to

add to the complaint by way of supplemental matter the fact of the judgment; I do not want anything except to allege the ripening of the claim into a judgment." The objection to the filing of the supplemental complaint was thereupon overruled, and the court stated: "It will be deemed as at issue now; that is, counsel may proceed and try the case on the theory that it is at issue; that is, I will receive in evidence what would be called for in case the allegation was permitted, just as much as if it were filed." Counsel for plaintiffs then offered, and the court admitted in evidence, certain parts of the record in the action of Fleischner, Mayer & Company against Redmond, after which counsel for defendants moved for a nonsuit, urging as grounds therefor: "First, that it does not appear from the testimony that there was any attachment ever levied so as to give the court jurisdiction, and that the court had and has no jurisdiction in this cause; second, there is no evidence before the court that any or either of the said chattel mortgages or the said assignment is fraudulent or void or voidable." This motion was denied, and the defendants thereupon proceeded to introduce their evidence. It thus appears that the only objection made to the filing of the supplemental complaint was that it came too late, and ought to have been filed at some previous stage of the trial. The defendants did not object because it was insufficient, or express any desire to, or move against it as a pleading. No objection was made to its being filed because it did not state facts sufficient to constitute a cause of suit, or that by it the plaintiffs sought to maintain their suit upon facts occurring since the filing of the original complaint. The defendants had ample opportunity to raise such questions, but they simply objected to the court granting the plaintiffs leave to file the supplemental complaint on the sole ground that it ought to have been filed before. We think, therefore, we

were justified in proceeding on the theory that the objection now sought to be made to the complaint was waived because not made at the hearing. It is true the supplemental complaint in form was not filed at the time, but the trial proceeded without objection, so far as the record discloses, with the understanding that it should be, as stated by the court, deemed on file.

Counsel also rediscusses in the petition for rehearing the facts in the case. But, in view of the original opinion, it is sufficient to say that a re-examination of the record has confirmed us in the views already expressed.

10. It appears, however, that, after the satisfaction of all claims ordered paid by the decree herein, there will remain in the hands of the receiver, or of the court below, a considerable amount of money—the proceeds of the sale of the property covered by defendants' mortgages—which counsel for defendants move to be paid over to them. The claim of the plaintiffs seems to be that such money should be distributed among Redmond's creditors, according to their respective rights, and that an opportunity ought to be given them to present their claims. But this is not a proceeding instituted for the benefit of his general creditors, but is a suit brought by plaintiffs to set aside and have declared void as to them the chattel mortgages referred to in the pleadings. These mortgages are valid between the parties, and the only creditors challenging their validity in this suit are the plaintiffs, and the intervening creditors, Kuh, Nathan & Fisher Company and Sweet, Orr & Company. As to them the instruments are fraudulent and void, but, so far as this proceeding is concerned, they are valid for all other purposes. We are of the opinion, therefore, that the balance on hand ought to be paid over to the defendants. The decree entered here will be modified accordingly, and the petition for a rehearing overruled.        REHEARING DENIED.