## John O'Neill et al. v. Robert Walsh.

92    61
a192s  202

1. FRAUDULENT CONVEYANCE—*What is Not.*—A trust deed executed by a grantor, in good faith, to secure an indebtedness to his sisters for actual expenses incurred by them in the support of his children after the death of his wife, can not be regarded as a fraudulent conveyance.

Bill to Set Aside a Fraudulent Conveyance.—Error to the Circuit Court of Will County; the Hon. JOHN SMALL, Judge, presiding. Heard in this court at the April term, 1900. Reversed and remanded. Opinion filed October 11, 1900. Mr. Justice DIBELL, dissenting.

FRED. MORIARTY and EGBERT PHELPS, attorneys for plaintiffs in error.

J. W. DOWNEY, attorney for defendant in error.

MR. JUSTICE CRABTREE delivered the opinion of the court. This was a bill in equity exhibited by defendant in error

against plaintiffs in error, seeking to have set aside a certain trust deed executed by John O'Neill to Robert Sharfenberg for the benefit of his sisters and co-defendants, Mary K. and Margaret L. O'Neill and Annie Moriarty.

It appears that on January 16, 1882, the defendant in error recovered a judgment in the Circuit Court of Will County against said John O'Neill for $427.27 and costs. An execution was issued on that judgment April 2, 1884, and returned unsatisfied June 30, 1884. Prior to the entry of this judgment John O'Neill's father died intestate leaving him surviving his widow, Mary O'Neill, and six children, being the plaintiffs in error and two sons, James and Frank, who are now deceased, leaving no issue or widows surviving them. When Thomas O'Neill, the father of plaintiffs in error, died, he was the owner of real estate consisting of a homestead, being situated in block 14, East Joliet, and also two other lots, 23 and 24, in block 32, School Section addition to Joliet.

On October 9, 1891, John O'Neill executed a quit-claim deed to his mother, Mary O'Neill, of his interest in the homestead property, and on October 26, 1891, quit-claimed to her his interest in the other two lots in block 32. She died intestate on June 10, 1895, leaving the four plaintiffs in error as her only heirs at law. On December 3, 1896, John O'Neill executed the trust deed in question to his sisters and co-plaintiffs in error. On December 30, 1897, in a *scire facias* proceeding instituted by defendant in error to revive the original judgment, judgment was entered against John O'Neill for the sum of $813.77, and an execution issued thereon which was returned unsatisfied. The bill alleges the insolvency of John O'Neill, that the trust deed is fraudulent as against defendant in error, and prays to have the same declared null and void, and the interest of said John O'Neill in said property subjected to the payment of defendant in error's judgment.

The defense, as disclosed by the answers of plaintiffs in error, is that there was no fraud in the trust deed, but that it was given in good faith to secure the sisters of John

O'Neill for the actual expenses incurred by them in the support of John's three children from the time of the death of his wife in 1882.

The cause was referred to the master to take and report proofs and his findings thereon. The master found in favor of defendant in error and recommended a decree accordingly. The cause was heard on exceptions to the master's report and a decree entered in favor of defendant in error, setting aside the trust deed.

It is insisted by plaintiff in error that there is no competent proof in the record of any judgment upon which this proceeding was supposed to be based, but the master's report, which found there was such a judgment, was not excepted to as to that finding, and we think, therefore, the question can not now be raised. But upon the facts we are of opinion the decree can not be sustained. Apart from the mere fact that the conveyance by trust deed was made, the only evidence in any way bearing upon the question of fraud was the testimony of John O'Neill and his sister Annie. They both swear that the trust deed was made in good faith to repay the sisters for the support of John's three children. After the death of John's wife in 1882, his three children were taken by his mother and the sisters, the former keeping the house and the latter working out for wages to support the family.

There is no contradiction of this testimony, and we know of no reason why John did not have the right to repay the sisters or secure their repayment as he swears he promised to do, for the services rendered to him in the support of his children. At the time defendant in error obtained his original judgment, John had his interest in the homestead property which was worth more than $1,000, and also in the other two lots. No reason appears why defendant in error should have waited fifteen years before attempting to make his judgment out of John's interest in the property, nor why he should have allowed two years to elapse after the death of John's mother, before reviving the judgment. This delay, unexplained, we regard as inexcusable.

Because of the absence of evidence to establish the alleged fraud, and also by reason of the unaccountable laches of defendant in error the decree will be reversed and the cause remanded with directions to dismiss the bill.

Reversed and remanded with directions.

Mr. Justice DIBELL, dissenting.

In November, 1896, John O'Neill was the owner of an undivided interest in the real estate described in the bill of complaint, which he had inherited from his mother upon her death, June 10, 1895. He was defendant in a Circuit Court judgment Robert Walsh had recovered against him years before, which had ceased to be a lien upon real estate, but the right to revive which still existed. In that month he received a letter from Walsh's attorneys indicating an intention to enforce payment of the judgment. A few days later he executed a note for $1,500 to his sisters, secured it by a trust deed upon his interest in the real estate, and the same was recorded. Walsh revived his judgment, had execution thereon issued, which was returned *nulla bona*, and then filed this bill to set aside the trust deed. The consideration set up for the note to O'Neill's sisters is that his mother and sisters took care of his children at their mutual home after the death of his wife on October 1, 1882. At the time these services were rendered no price per week, month or year had been agreed upon which he should pay them. No charge was made against him from time to time for what was furnished these children. No account was kept of what was expended or done for their benefit. When a debtor, upon being pressed by his creditor, conveys his property to his relatives, it is not enough to support the conveyance that somewhere in their past lives can be found favors rendered by the relatives to the debtor which were of value to him. Very seldom is a deed made to a member of the family to defeat a creditor, where some such transaction can not be found in the past history of the family to serve as a consideration for the conveyance. It seems to me that to sustain such transactions as a sufficient consid-

O'Neill v. Walsh.

eration is to furnish a ready weapon with which to defeat creditor's bills. The true test is whether, at the time the services or favors were rendered within the circle of the family relation, the parties then intended a debt to arise out of the transaction which was to be enforced and paid in any event. Courts in looking to see whether such a consideration is shown, inquire whether a price was fixed, or charges then were made, or a note then was given, or any account was then kept of the various services and expenditures. If no such facts are found the conclusion is that the parties did not then intend the creation of a valid *bona fide* debt, payment of which was to be made in any event. (Frank v. King, 121 Ill. 250; Dillman v. Nadelhoffer, 162 Ill. 625; Schuberth v. Schillo, 177 Ill. 346.) Much of what was considered in making up the note from O'Neill to his sisters was outlawed. While none but the debtor can avail of that defense, yet the circumstance, as suggested in the case last cited, tends to show there was not a valid existing debt which was to be enforced. It is true O'Neill testifies he told his sisters he was sorry he could not do anything to help; that he would pay them out of this property whenever it was sold; that he would see they were compensated for their advances; that he would aim some time to make it all right, etc. Probably in every case where it is sought to support a conveyance which has operated to defeat creditors by a consideration made up of services or favors rendered years before because of the family relation, vague expressions of an intention to repay or make it right can be found. A similar promise was proven in Dillman v. Nadelhoffer, *supra*, but it did not avail as against the creditor. No doubt O'Neill's sisters rendered much kind and valuable service to their nephews and niece, his orphaned children, in their mutual home. But it seems clear to me that the parties had no idea then of a present existing debt therefor, to be paid in any event, and that the services were not rendered for an expected compensation, but rather because of the family relation, and that if Walsh had not pressed his claim the note and trust deed would not have been given.

Walsh's delay did no harm to defendants, and I regard it as immaterial, so long as he was not barred by the statute of limitations. Moreover, much of it is fully explained. O'Neill at the time the judgment was first recovered had an interest in this real estate inherited from his deceased father. But the only valuable lot was then the homestead of the widow and children, and it was all subject to dower. Walsh did not wish to advance what would be necessary to subject O'Neill's interest to sale on execution. Then O'Neill conveyed his interest to his mother, and she mortgaged the property, and it was then beyond Walsh's reach, and it so remained till, by the mother's death, O'Neill again became a part owner, and it was no longer subject to homestead, as he had removed to Streator. The delay from the death of the mother, June 10, 1895, till November, 1896, when Walsh caused O'Neill to be notified, was but slight. I am of opinion the decree of the court below should be affirmed.