GARRIE S. FRENCH

v.

THE COMMERCIAL NATIONAL BANK et al.

*Opinion filed October 25, 1902—Rehearing denied December 4, 1902.*

1. PLEADING—*when allegation of return of execution nulla bona is unnecessary.* If a bill is filed by a judgment creditor, not to reach equitable assets but to set aside a fraudulent transfer of the debtor's stock of merchandise, made for the purpose of hindering creditors of the judgment debtor, it is not necessary to allege or prove issue, and return *nulla bona*, of execution.

2. SAME—*when defense must be made by demurrer or answer.* If the defendant to a bill by a judgment creditor to set aside an alleged fraudulent conveyance of personal property desires to question the jurisdiction of the court upon the ground that the bill failed to allege an execution had been issued and placed in the hands of the sheriff, he must present his defense by demurrer or answer, and cannot make the point for the first time in a court of review.

3. DEBTOR AND CREDITOR—*right of creditor to file bill to set aside conveyance of personal property.* A lien upon a judgment debtor's personal property may be created by issuing an execution and placing it in the hands of the sheriff, and when this is done, a bill in equity may be filed to set aside a fraudulent conveyance of personal property; and it is not essential to the jurisdiction of the court that the execution be returned *nulla bona* before the bill is filed.

4. TRIAL—*mere statement by chancellor of his views has no effect as a judicial determination.* The mere statement by the chancellor, from the bench, as to the view he then entertained of the evidence reported by the master, has no effect as a judicial determination of the cause or any issue in the case.

5. EQUITY—*equity has jurisdiction to compel purchaser at collusive sale to account for property.* A court of equity has jurisdiction to require a party to account for property coming into his hands as purchaser at an execution sale under an agreement entered into between him and the execution creditor for the fraudulent purpose of hindering, delaying and cheating the creditors of the judgment debtor.

6. COMPENSATION—*law does not award compensation for the doing of illegal acts.* The law does not award compensation for the doing of illegal acts, nor recognize that any one is entitled to recompense for services rendered in furthering a conspiracy to defraud creditors, even though the claim is for services as alleged "trustee" for the parties.

*French v. Commercial Nat. Bank,* 97 Ill. App. 533, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. A. H. CHETLAIN, Judge, presiding.

The appellee bank, at the February term, 1897, of the superior court of Cook county, obtained a judgment against George A. Leslie for $419 and costs. On the 27th day of February, 1897, the bank filed a bill in chancery in said court against the appellant, Garrie S. French, George A. Leslie and Lizzie M. Leslie, his wife, Ezra T. Miller, Alva T. Martin and Anderson E. Martin, alleging that an execution issued on said judgment had been returned *nulla bona;* that said judgment debtor, his wife, Lizzie M. Leslie, and Ezra T. Miller, entered into a fraudulent conspiracy to hinder, delay, defraud and cheat the creditors of said George A. Leslie; that in pursuance of such conspiracy said judgment debtor confessed two judgments in the circuit court of Cook county,—one in favor of his said wife, in the sum of $3718.33, and the other in favor of the said Ezra T. Miller, in the sum of $7104.16; that these judgments were entered on notes which were without consideration and wholly colorable and fraudulent; that executions were issued on said judgments and levied upon a stock of goods of the value of $10,000 then owned by said George A. Leslie; that said Lizzie M. Leslie, Ezra T. Miller and the appellant, Garrie S. French, in further pursuance of such fraudulent conspiracy, agreed that the said Garrie S. French should become the purchaser of said stock of merchandise at the sheriff's sale under executions to be issued on said judgments, and should remove the property and sell same for the benefit of said Leslies, and should receive $150 per month for his services; that said appellant, French, well knew the judgments in favor of Mrs. Leslie and Miller were fraudulent and that the sale thereunder was for the purpose of hindering and delaying creditors of said George A. Leslie;

that at the sheriff's sale said French bid off the said merchandise and is selling and disposing of the same, and that the notes and accounts due to said George A. Leslie have been assigned to said French and he is collecting the same. The bill prayed for an injunction restraining French from disposing of the merchandise, and that a receiver be appointed with power and authority to take and hold the same, etc. An injunction was granted and Edward B. McKey appointed receiver.

Several intervening petitions of creditors of George A. Leslie were filed, and the issues having been made up, the cause was referred to a master to take proofs and report. May 21, 1897, the master filed a report, in which he found, in substance, that the sole valid consideration for the note for $3500 on which judgment was confessed in favor of Lizzie M. Leslie was $627, and that the sole consideration for the $7000 note on which judgment was confessed in favor of Miller was $1000, and that both of said notes were fraudulent as to creditors. The master also found that there was a trust agreement between Lizzie M. Leslie, Ezra T. Miller and Garrie S. French, as averred in the bill, and that in pursuance of said trust agreement French purchased George A. Leslie's stock at the sheriff's sale, he bidding therefor the sum of $5500. The master found in favor of the claim of the Commercial National Bank and the claims of certain intervening creditors, and recommended a decree in accordance with the prayer of the bill.

Lizzie M. Leslie and Garrie S. French filed exceptions to the master's report, after which an agreement in writing was entered into between George A. Leslie, Lizzie M. Leslie, the Bluffton Shoe Company, Jacob Roedel, W. L. Kreider & Sons, J. Landis & Sons and W. R. Usher & Sons, (all of whom, except the Leslies, were intervening creditors,) wherein, after reciting that the master's report had been filed finding that the judgments confessed in favor of Lizzie M. Leslie and Miller should be set aside,

and that the property levied on by virtue of executions issued on said judgments should be turned over to the receiver for the benefit of the creditors of George M. Leslie, and also that the assignment of accounts against, etc., by George A. Leslie and French should be set aside, and that a hearing had been had in court on exceptions to said report, and that all parties were desirous of settling their claims in an amicable way, it was agreed that Lizzie M. Leslie should withdraw her exceptions to the report and consent to its being approved, and aid the complainant and the receiver in obtaining from Garrie S. French the property of George A. Leslie in French's hands, and also that a decree should be entered in the cause providing for the distribution of the funds in the receiver's hands, as follows: First, payment of all court costs in all cases of creditors against Leslie; second, $1000 to Miller; third, payment of the claim of the Commercial National Bank in full; fourth, payment of solicitors' fees to Sleeper, McCordic & Barbour, $150; Flower, Smith & Musgrave, $150; Newman, Northrup & Levinson, $100; claims of J. Roedel, Kreider & Sons, Landis & Sons, the Bluffton Shoe Company and Usher & Sons fifty per cent, respectively, plus court costs, remainder one-half to Lizzie M. Leslie and one-half to James J. Barbour.

S. A. French, father of Garrie S. French, was the solicitor of Lizzie M. Leslie, and after the agreement of July 20 was executed she employed Messrs. Coffey & Hurtubise as her solicitors, and they, by her authority, withdrew her exceptions to the master's report. March 9, 1897, an order was entered ordering Garrie S. French to turn over to the receiver all books, papers, vouchers and documents belonging to George A. Leslie or in which he was interested, and from collecting and prosecuting, or attempting to collect or prosecute, any agreement placed with him by the said Leslies, and directing the receiver to proceed with the collection of the same. August 27, 1897, a similar order was entered, to which

appellant filed answer, to the effect he was not answerable to any one except Lizzie M. Leslie and Ezra T. Miller, and was willing to answer to them; that the bank had not shown, by its bill or the evidence thereunder, any right to call on him for an accounting.

The further proceedings in the effort to have French deliver the property to the receiver and make an accounting resulted in October, 1897, in the entry of a judgment assessing a fine of $500 against him, and ordering that he be confined in the county jail until he should comply with the orders of the court. This judgment was reversed by the Appellate Court. (*French* v. *Commercial Nat. Bank,* 79 Ill. App. 110.)   January 11, 1898, after the judgment in the last mentioned case had been reversed and the cause remanded, the Commercial National Bank filed, by leave of court, an amended and supplemental bill, in which are set up, among other things, the agreement of July 20, 1897, and the extension thereof, dated September 10, 1897, heretofore referred to, praying, among other things, that the judgments in favor of Lizzie M. Leslie and Ezra T. Miller be declared fraudulent as to creditors, and that they, Leslie and Miller, take nothing by said judgments, but be compelled to share in the distribution of funds in the manner prescribed in the composition agreement of July 20, 1897, and that the trust agreement of February 8, 1897, be declared a fraud, etc.   Garrie S. French demurred to the entire amended and supplemental bill, assigning grounds of demurrer, but subsequently he answered the bill.   The Leslies each filed an answer admitting the execution of the composition agreement of July 20, 1897, set up in the amended and supplemental bill. Miller also answered, claiming the benefit of the composition agreement, as also did the other creditors heretofore named.   Replications were filed to the answers, and the amended and supplemental bill was referred to a master to take proofs and report.   The master's report was filed July 10, 1899, and a decree was entered March 2,

1900. The court, by its decree, finds specifically in favor of the material allegations of the bill and the amended and supplemental bill. The court finds that the fair market value of the property turned over to appellant at the sheriff's sale was $7560.25, and that it might have been sold for $9000; that appellant sold the same to one David Rankin for $3250, and that said sale was a pretense and a fraud and for the purpose of hindering and delaying complainant in the collection of its judgment, and that appellant had in his hands property of George A. Leslie, or the proceeds thereof, of the value of $7560.25, and $298.35 of money collected; finds the compromise agreement of July 20, 1897, binding on the parties; finds that there is due from appellant $7566.85, with interest from September 21, 1897, amounting in all to $8433.34, after allowing all proper credits. The court overrules all exceptions to the master's report so far as said exceptions conflict with the findings of the decree, and approves the report except in so far as it conflicts with the decree. The ordering part of the decree is, in substance, as follows: "That Garrie pay to Edward B. McKey, receiver in this cause, within forty-five days after the entry of this decree, the sum of $8433.34 wrongfully withheld by him, and deliver to receiver all books of accounts, papers and documents belonging to or received from George A. Leslie; that judgment in favor of Lizzie M. Leslie against George A. Leslie for $3718.33, and judgment of Ezra T. Miller against George A. Leslie for $7104.76, be set aside; that Henry M. Rogers, administrator to collect the estate of Lizzie M. Leslie, deceased, be held to abide by and take under the compromise agreement of July 20, 1897, and not under their judgment writs; that the complainant and the defendants the Bluffton Shoe Company, W. L. Kreider & Sons, J. Landis & Sons, W. R. Usher & Sons, and their solicitors, be paid the amounts due them found by master in chancery Stevenson by virtue of the provisions in their favor in the agreement of July

20, 1897; that James J. Barbour be paid by the receiver whatever sum of money shall be due him by virtue of the provision in his favor in the agreement of July 20, 1897; that the receiver, after he shall receive payment from said Garrie S. French, as directed in this decree, shall make report of all moneys in his hands as such receiver; and the court reserves jurisdiction for the purpose. of carrying out the provisions of this decree, and makes no disposition of the accounts receivable of George A. Leslie as yet uncollected," etc.   Garrie S. French prosecuted an appeal from this decree to the Appellate Court for the First District, and from a judgment of affirmance entered in that court has brought the cause to this court by a further appeal.

GAGE & DEMING, and HENRY D. BEAM, for appellant.

JAMES J. BARBOUR, for appellees.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The appellant filed thirty-three assignments of error in the Appellate Court, all of which he renews in this court.   The greater number of these assignments relate to matters affecting only the other parties to the proceeding and in which appellant has no concern.   Such other parties do not complain, and he cannot do so for them.   The orders commanding the appellant to deliver property to the receiver and to make an accounting, and the money decree entered against him, affect the appellant, and the assignments of error in respect of such orders and the decree are all upon which he is entitled to be heard.

It is strenuously urged the superior court, as a court of equity, was without jurisdiction to enter any order or decree in the case, for the reason, it is insisted, it appeared upon the hearing that the execution issued on the judgment in favor of the appellee bank was held by the

sheriff but eight days, and was then returned by direction of the attorney for the judgment plaintiff. The bill alleged the issuance of the execution and return *nulla bona*. But the allegation was superfluous, for the reason the bill did not seek to reach and apply equitable assets of the judgment debtor to the satisfaction of the judgment, but to set aside a fraudulent transfer of the stock of merchandise which, as the bill alleged and the evidence abundantly established, Mrs. Leslie, Miller and the appellant had collusively caused to be made to the appellant for the purpose of hindering and delaying the creditors of the judgment debtor. It was therefore unnecessary to the maintenance of the bill it should be alleged and proven that an execution had been issued on the judgment and returned "no property found" wherewith to satisfy the judgment. *Dillman* v. *Nadelhoffer*, 162 Ill. 625; *Comstock-Castle Stove Co.* v. *Baldwin*, 169 id. 636; *Hughes* v. *Noyes*, 171 id. 575.

A judgment creditor may, at once on the entry of his judgment and the creation of a lien thereby or thereunder, file a bill in equity to remove a fraudulent conveyance of the property of the judgment debtor. The judgment does not, however, constitute a lien on personal property. A lien on such property may, however, be created by the issuance of an execution and placing the same in the hands of the sheriff to execute, and when that is done a bill in equity may be filed to set aside an alleged fraudulent conveyance of personal property of the judgment debtor in order the lien of the execution may be enforced. In such state of case it is immaterial whether an execution had been issued and returned *nulla bona* prior to the filing of the bill. *Newman* v. *Willetts*, 52 Ill. 98; *Comstock-Castle Stove Co.* v. *Baldwin, supra;* Bump on Fraudulent Conveyances, (4th ed.) sec. 535.

The bill in the case at bar did not aver that an execution had been issued and was then in the hands of the sheriff to be executed. The appellant did not demur to

the bill, but filed an answer thereto. The appellant by his answer refused to admit or deny the allegations of the bill with reference to the return of the execution on the judgment, but averred the complainant had not exhausted its remedy at law before filing the bill. A supplemental bill, and appellant's answer thereto, merely reiterated the averments of the original bill and answer with reference to the return of an execution *nulla bona.* The proof disclosed the issuance of an execution and a return thereon, as before stated. The appellant insisted the proof also showed the return was at the direction of counsel for the plaintiffs, and under the ruling in *Scheubert* v. *Honel*, 152 Ill. 313, did not show the complainant had exhausted its legal remedy. Appellant also insists in this court that a court of equity was wanting in jurisdiction to entertain the bill, for the reason, as he urges, it was not proven by the return the sheriff was unable to find property upon which to levy the execution. The appellee insisted, and now insists, it appeared from the proof the sheriff returned the execution, not because of any direction given by counsel for complainant so to do, but because he was unable to find any property upon which to levy the execution.

It appeared from the evidence that counsel for the complainant requested the sheriff to return the execution, but it quite clearly appeared the execution was returned because of the inability of the sheriff to find any property whereon to make a levy, and not by reason of the request or direction of counsel. It was not essential to the jurisdiction of a court of equity in such cases as this that an execution should have been issued and returned *nulla bona* before filing the bill. Whether it was essential that an execution should have been in the hands of the sheriff and a lien thereby created was not mooted in the bill, the answer, or otherwise in the record. If the appellant desired to challenge the jurisdiction of the court to entertain the bill on the ground a lien did not

exist in favor of the judgment creditor, he should have done so by demurrer to the bill or by his answer. He did not raise that defense in any way in the trial court and has not raised or insisted upon it in this court. The relief granted by the court is not foreign to equity jurisdiction, and the cause having been thus submitted, heard and determined, the appellant could not, had he desired so to do, now be heard to urge it was necessary to the jurisdiction of a court of equity it should have been alleged and proven that an execution had been issued on the judgment and lodged in the hands of the sheriff at the time the bill was filed. *Stout* v. *Cook,* 41 Ill. 447; *Monson* v. *Bragdon,* 159 id. 61; *Kaufman* v. *Wiener,* 169 id. 596.

There is no force in the objection that it was error to allow the supplemental bill to be filed. The argument in support of the objection is, that the original bill was defective and it could not be aided by setting up matters which subsequently arose, and that the complainant in the bill had been defeated upon a hearing of the issues thereunder before the supplemental bill was filed. We do not think there was any defect in the original bill, or that the supplemental matters set up in the supplemental bill were without connection or relation to the grounds of recovery relied upon in the original bill, or that the supplemental bill made a new case. The original bill and supplemental bill both proceeded upon the same general ground of fraudulent conspiracy on the part of defendants to the bill, including appellant. The amended or supplemental bill sets up, in addition thereto, the composition agreement, by the terms of which the judgment due the appellee bank was to be paid in full, and the claims of Mrs. Leslie and Miller, reduced to the amounts justly due them, were also to be paid, and which agreement also provided for the payment of percentages upon other indebtedness of said George A. Leslie. Aside from this, the appellant did not abide his demurrer to the supplemental bill, but made answer thereto.

In support of the insistence the case made by the original bill had been heard and decided adversely to the complainant therein, it is urged it appears from a certificate of evidence preserved by the appellee bank that the chancellor, when the investigation was being had as to the withdrawal by Mrs. Leslie of her objections filed to the report of the master, stated to her, in substance, that he did not agree with the conclusion reached by the master that the note was fraudulent upon which the judgment in her favor against her husband had been entered, and inquired if she, with this knowledge of the court's views, still desired to withdraw her objections to the master's report. Mrs. Leslie answered that she adhered to her course in withdrawing her objections to the report. The evidence disclosed not only that the appellant participated in the fraudulent scheme to hinder, delay and defraud the creditors of said George A. Leslie through the medium of the collusive judgments in favor of Mrs. Leslie and Miller, but that Mrs. Leslie had become satisfied the appellant, having obtained the possession of her husband's property as purchaser at the sheriff's sale, intended to defraud and wrong her out of any benefit therefrom. This fact, no doubt, had its influence in inducing her to withdraw her objections to the report of the master and enter into the composition agreement with the other of her husband's creditors, whereby she was allowed a claim in the amount justly due her. We think the evidence taken before the master justified the conclusion that Mrs. Leslie had no legal, enforceable demand against her husband for the greater part of the amount of her note, and that, though she may have been free from a fraudulent intent in taking the note in an amount largely in excess of the amount legally due her from her husband, yet that she knew that the note given to Miller for $7104.16 by her husband was fraudulent except as to the sum of $1000, and, as found by the final decree, she, with her husband, Miller and the appellant, entered into

a fraudulent scheme to place the property of her husband beyond the reach of his creditors through the medium of judgments to be entered on the notes held by her and Miller and sales of her husband's property by virtue of executions issued on such judgments. These facts so disclosed by the proofs taken before the master no doubt also aided Mrs. Leslie in determining she ought not to persist in her objections to the report of the master. The chancellor, on the occasion in question, entered no order or decree with reference to the report of the master, and the statements made by the chancellor from the bench as to the view he then entertained of the evidence reported by the master had no effect as a judicial determination of the cause or any issue or contested fact in the case. The supplemental bill reiterated the charge made in the original bill, that Mrs. Leslie, her husband, Miller and the appellant perpetrated a fraud upon the creditors of the husband through the medium of the judgments in favor of Mrs. Leslie and Miller, and the final decree found and declared the charge sustained by the evidence taken in the case.

While the appellant cannot be permitted to keep alive litigation in which others alone are interested, yet as the original and supplemental bills alleged, and the decree found, that the appellant was a party to the conspiracy to defraud the creditors of George A. Leslie, we have considered the evidence bearing upon that charge of fraud. Without extending the opinion by a recitation of the proof, we state our conclusion to be that the evidence removed every doubt of the guilt of the appellant of the charge against him.

The court had full jurisdiction to require appellant to account for the property of George A. Leslie which came into his hands as purchaser at the sheriff's sale under the agreement entered into by said appellant, Mrs. Leslie and said Miller with the fraudulent intent and purpose of hindering, delaying and cheating the creditors of

the said George A. Leslie. We need not recite the various orders made by the court requiring the appellant to appear and make report and submit to an examination in respect of such property and his acts and doings with relation to it. These orders the appellant persistently and contumaciously evaded and failed and refused to obey. Finally, on the 17th day of February, 1899, nearly two years after the entry of the first of the orders made by the court requiring him to deliver up the property in question and to account, he filed an affidavit for the continuation of the investigation against him under the last of the orders, on the ground of alleged illness. The allegations of the affidavit were admitted as evidence and a continuance denied, and he thereby avoided cross-examination of his statements. He stated therein that on the same day he received the goods from the sheriff he sold the entire stock of merchandise to one David Rankin for the sum of $3250, and had collected only $298.35 from the accounts due to said George A. Leslie, making a total of $3548.85 received by him from both sources; that he acted, in disposing of the goods, under the orders of Mrs. Leslie; that he has paid expenses and become liable to pay other sums, but the exact amount whereof he does not know; that he had read the testimony given by George A. Leslie, Mrs. Leslie, Ezra T. Miller and Charles Thompson, and that he specifically denied each and every statement made by each and every of such witnesses in contradiction of the statements made in his affidavit. Upon the consideration of the entire evidence, including this affidavit, the chancellor reached the conclusion the alleged sale of the merchandise to Rankin was a mere pretense, and that the appellant had in his hands, or had converted to his own use, the goods received by him from the sheriff as purchaser at the execution sale and should account to the receiver for their value, and also account for the additional sum of $298.35 collected from those who were indebted to said George

A. Leslie, together with interest from the date of the refusal of appellant to obey the first of the orders entered by the court requiring him to deliver the goods to the receiver or render an accounting. The court found from the proof that the goods were of the value of $7560.25, and that the total amount to be accounted for by the appellant, including interest, was $8433.34. The decree ordered appellant to pay that amount to the receiver within forty-five days.

The complaint of the appellant that he was allowed no compensation for his services as "trustee," as he styles himself, "of Mrs. Leslie and Miller," hardly demands discussion. The law does not award compensation for the doing of illegal acts, and does not recognize that any one is entitled to recompense for services rendered in furtherance of a conspiracy to wrong and defraud creditors.

There is no lack of testimony to sustain the finding that the goods delivered to the appellant were of the value of $7560.25. The quantity of the goods which went into the hands of the appellant was determined by the production of the invoice of the purchase thereof by said George A. Leslie and proof of daily sales made from the stock by Leslie, supplemented by other satisfactory proof as to the stock delivered by the sheriff to the appellant. The values of the goods were fixed by the invoices of their purchases from the wholesale dealers. It appears that if valued at retail prices the stock would have been appraised at more than $9000.

The statements of the appellant in his affidavit for a continuance, and the testimony of S. A. French, father of the appellant, are relied upon to establish that the goods were sold to Rankin for $3250. Said S. A. French was solicitor for Mrs. Leslie in the proceeding until she thought she had reason to suspect both solicitor and his son, the appellant, intended to cheat and defraud her out of the property of the husband in the hands of the son. She then employed other counsel. The appellant,

as before shown, avoided cross-examination, his *ex parte* affidavit for a continuance being accepted as testimony in the case. S. A. French testified that Rankin bought the stock of goods and paid the appellant for them in currency. He denied that he ever had any of the money alleged to have been paid by Rankin; said his son, the appellant, did not have a bank account, but when he (the son) had more money than he wanted to use he deposited with the witness, but denied receiving any money paid by Rankin. It was proven Mrs. Leslie, as part of the money to be paid her under the fraudulent agreement, received from the Frenches $200 in a check signed by S. A. French, father of the appellant. A number of checks payable to David Rankin, and having endorsed thereon what purported to be the signature of David Rankin, and endorsed also by S. A. French, were deposited to the credit of S. A. French in the Metropolitan National Bank of Chicago. It was proven these checks were given for goods sold to different parties out of the stock of goods owned by George A. Leslie and delivered by the sheriff to the appellant under the sale on the executions in favor of Mrs. Leslie and Miller. The sales for which such checks were given were made after the date given by the Frenches as the time when the alleged sale was made to Rankin. It was proven the name of David Rankin appearing on the checks as endorser was not in the handwriting of David Rankin. Other testimony introduced in behalf of the appellee bank as to statements and admissions of appellant left it beyond doubt the appellant had the goods and was disposing of them after the date of the pretended sale to Rankin. The checks deposited by S. A. French were for goods sold out of the stock owned by Leslie after the date of the alleged sale of those goods to Rankin. Upon the whole evidence the chancellor was fully warranted in finding the sale to Rankin was a mere pretense, invented with the design and purpose of enabling Garrie S. French to relieve him-

self of liability to account to his co-conspirators in the fraudulent scheme to defeat the creditors of George A. Leslie, or to account to the receiver for any sum above the amount falsely represented to have been received from said David Rankin for the goods.

The decree is right, and it is affirmed.

*Decree affirmed.*